IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


MICHAEL BERTOLINO,

                    Plaintiff,

v.                                                    Civil Action No. 3:04CV121

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I.  Introduction

A.    Background

        Plaintiff, Michael D. Bertolino, (Claimant), filed his Complaint on December 17, 2004,

seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant,

Commissioner of Social Security, (Commissioner).[1]  Commissioner filed her Answer on April 5,

2005.[2]  Claimant filed his Motion for Summary Judgment and Brief in Support on November 7,

2005.[3]  Commissioner filed her Motion for Summary Judgment and Brief in Support on November

16, 2005.[4]

B.    The Pleadings

                    1.    Claimant's Motion for Summary Judgment and Brief in Support.

        _____

        [1] Docket No. 1.

        [2] Docket No. 9.

        [3] Docket Nos. 23-24.

        [4] Docket No. 25.

C.    <u>Recommendation</u>

I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision.   Specifically, the ALJ posed a proper hypothetical question to the Vocational Expert.

## II.  Facts

A.    <u>Procedural History</u>

 On May 14, 2003, Claimant filed for Supplemental Security Income (SSI) payments alleging disability since November 5, 2001.[5]  The application was denied  initially and on reconsideration. A hearing was held on August 31, 2004 before an ALJ.    The ALJ's decision, dated October 1, 2004, denied the claim finding Claimant not disabled within the meaning of the Act.  The Appeals Council denied Claimant's request for review of the ALJ's decision on November 23, 2004.  This action was filed and proceeded as set forth above.

B.    <u>Personal History</u>

Claimant was 52 years old on the date of the August 31, 2004 hearing before the ALJ. Claimant has a high school education and two years of college and past relevant work experience

---

[5]  On July 16, 1996, Claimant filed an application for SSI alleging disability since May 19, 1992.  The claim was denied at the initial level on January 28, 1997 and was not further pursued.  Claimant filed a second application for SSI benefits on March 20, 2000, alleging disability since March 13, 2000.  The claim was denied at the initial level on August 25, 2000. Claimant did not pursue this application.  On November 13, 2001, Claimant filed a third application for SSI alleging disability since March 1, 2000.  This application was denied initially and upon reconsideration and by Administrative Law Judge decision, dated March 28, 2003. The unfavorable decision was upheld by the Appeals Council on May 3, 2003 and was not further appealed.

as a telemarketer.

C.    Medical History

The following medical history is relevant to the time period during which the ALJ

concluded that Claimant was not under a disability: November 5, 2001- October 1, 2004.

**Dr. Samina Aziz, 2/25/2003, Tr. 157**
Mental status: normal.
Mood: mild [sic] anxious.
Affect: normal.
GAF Score: 58.

**Dr. Samina Aziz, 2/11/2003, Tr. 158**
Client did not show for today's appointment.

**Dr. Samina Aziz, 1/29/2003, Tr. 159**
Assessment: This is a patient with a history of symptoms of bipolar disorder, primarily a history of depression and anxiety.  Wellbutrin is being decreased and BuSpar is being added to medication regimen to target anxiety.

**Dr. Samina Aziz, 1/24/2003, Tr. 160**
Mental status: normal.
Mood: anxious.
Affect: normal.
GAF Score: 56.

**Dr. Samina Aziz, 1/10/2003, Tr. 161**
Mental status: normal.
Mood: mild [sic] depressed.
Affect: normal.
Suicidal Assessment: none
GAF Score: 57.

**Dr. Samina Aziz, 12/06/2002, Tr. 162**
Mental status: normal.
Mood: mild [sic] depressed.
Affect: normal.
Suicidal Assessment: none
GAF Score: 59.

**Dr. Samina Aziz, 11/18/2002, Tr. 163**
Mental status: normal.

Mood: depressed.
Affect: normal.
Suicidal Assessment: none
GAF Score: 58.

**Dr. Samina Aziz, 11/04/2002, Tr. 165**
Mental status: normal.
Mood: mild [sic] anxious.
Affect: normal.
Suicidal Assessment: none
GAF Score: 58.

**Dr. Samina Aziz, 10/28/2002, Tr. 166**
Mental status: normal.
Mood: mild [sic] anxious, depressed, angry.
Suicidal Assessment: none
GAF Score: 58.

**Dr. Samina Aziz, 9/16/2002, Tr. 167**
Mental status: normal.
Mood: mild [sic] anxious, depressed.
Affect: normal.
Suicidal Assessment: none
GAF Score: 56.

**Medical Advice Request, 7/28/2003, Tr. 168**
"Medical Analysis: We need full, current mental status and more detailed ADL's. Evidence in file is vague and does not provide clear picture of symptoms or functioning. If Dr. Aziz cannot provide more, YCE is needed."

**Clinical Interview, Claudia E. Johnson Brown, Ph.D., 9/26/2003, Tr. 169-176**
Initial Diagnostic Impressions:
Axis   I:      Mood Disorder NOS;
Axis   II:     Personality Disorder;
Axis   III:    High blood pressure, breathing difficulties due to a bronchial blockage, mobility problems, seizure disorder, arthritis, frequent headaches and thyroid problems;
Axis   IV:     Occupational Problems;
Axis   V:      GAF: 55.

**Psychiatric Review Technique Form, 10/23/2003, Tr. 177-190**
Affective Disorders: disturbance of mood, accompanied by a full or partial manic or depressive syndrome.

A medically determinable impairment is present that does not precisely satisfy the diagnostic

criteria above: Mood Disorder, NOS.

Personality Disorders: inflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress.

A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above: Mood Disorder, NOS.

FUNCTIONAL LIMITATIONS:
1.      Restriction of ADL, moderate;
2.      Difficulties in Maintaining Social Functioning: moderate;
3.      Difficulties in Maintaining Concentration, Persistence, or Pace: moderate;
4.      Repeated Episodes of Decompensation, Each of Extended Duration: none.

"C" Criteria of the Listings: evidence does not establish the presence of the "C" criteria.

**Mental RFC, 10/23/2003, Tr. 170-198**
UNDERSTANDING AND MEMORY:
The ability to remember locations and work-related procedures; to understand and remember very short and simple instructions: not significantly limited.
The ability to understand and remember detailed instructions: no evidence of limitation in this category.

SUSTAINED CONCENTRATION AND PERSISTENCE:
The ability to carry out very short and simple instructions: not significantly limited.
The ability to carry out detailed instructions: no evidence of limitation in this category.
The ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual; to complete a normal work-day and workweek without interruptions: moderately limited.
The ability to work with or proximity to others; to sustain an ordinary routine without special supervision; to make simple work-related decisions: not significantly limited.

SOCIAL INTERACTION:
The ability to interact appropriately with the general public; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them: moderately limited.
The ability to ask simple questions or request assistance: not significantly limited.

ADAPTATION:
The ability to respond appropriately to changes in the work setting: moderately limited.
The ability to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places, use public transport; to set realistic goals or make plans independently of others: not significantly limited.

**Dr. Robert G. Looby, 11/11/03, Tr. 195**
ASSESSMENT:
1.      Chronic low back pain;
2.      Hypothyroidism;
3.      Chronic anxiety state;
4.      Hypertension;
5.      Obesity;
6.      Noncompliance.

**Dr. Robert G. Looby, 7/11/03, Tr. 197**
ASSESSMENT:
1.      Generalized anxiety disorder;
2.      Hypertension;
3.      Exogenous obesity;
4.      Gout by history;
5.      Chronic dermatitis, right shin.

**Mental Residual Functional Capacity Assessment, Patricia S. Semmelman, Ph.D., 1/23/2004, Tr. 204-206**
UNDERSTANDING AND MEMORY:
Not significantly limited.

SUSTAINED CONCENTRATION AND PERSISTENCE:
The ability to carry out very short and simple instructions/detailed instructions; to perform activities within a schedule, maintain regular attendance and be punctual; to work with or proximity to others; to sustain an ordinary routine without special supervision; to make simple work-related decisions: not significantly limited.
The ability to maintain attention and concentration for extended periods; to complete a normal work-day and workweek without interruptions: moderately limited.

SOCIAL INTERACTION:
The ability to interact appropriately with the general public; to ask simple questions or request assistance; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to get along with coworkers or peers without distracting them: not significantly limited.
The ability accept instructions and respond appropriately to criticism from supervisors: moderately limited

ADAPTATION:
The ability to respond appropriately to changes in the work setting: moderately limited.
The ability to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places, use public transport; to set realistic goals or make plans independently of others: not significantly limited.

**Psychiatric Review Technique Form, Patricia S. Semmelman, Ph.D., 1/23/04, Tr. 207-221**

Affective Disorders: A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above: Mood Disorder.

Anxiety-Related Disorders: A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above: Anxiety Disorder.

Personality Disorders:  A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above: PD-NOS.

Rating of Functional Limitations:
1.     Restriction of ADLs: mild, moderate.
2.     Difficulties in Maintaining Social Functioning: moderate.
3.     Difficulties in Maintaining Concentration, Persistence, or Pace: mild.

"C" Criteria of the Listings: no evidence.

**Community Mental Health Services, 2/10/2004, Tr. 222**

Bipolar Affective disorder.

**Community Mental Health Services, 7/16/2003, Tr. 225**

DIAGNOSIS:  Bipolar disorder, NOS.

**Community Mental Health Services, 7/16/2003, Tr. 229**

DIAGNOSIS:
Axis I: Generalized anxiety disorder.
Axis II: Personality disorder/NOS.
Axis IV: Problems with finances.

D.     Testimonial Evidence

1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows

(Tr. 234-254):

ATTY          You had mentioned that you're using a cane at this point because of the

medication.  The effects of the medication.

CLMT          I think so, yeah.

ATTY          Will you explain that a little bit to us, please?

CLMT        I fall forward all the time.  (INAUDIBLE).

ATTY        So you use the cane - -

CLMT        Not all the time, but once in awhile I hit my head.  I like fall forward and I

feel like I'm going to pass out.  And I can't do that.

ATTY        (INAUDIBLE) - -

CLMT        Right.

ATTY        - - and will keep you upright, and prevent you from falling to the ground.

CLMT        Usually.  Usually.  I fell the other day.

ATTY        Did somebody prescribe the cane for you?

CLMT        My doctor.

                        *                *                *

ATTY        What are you seeing him for, primarily?

CLMT        Panic.  Dizziness.  Blood pressure.

ATTY        Right.  You've had some problems with your blood pressure, and in fact

you're on medication for that.

CLMT        Yeah.

ATTY        You've also had problems off and on with gout.  Is that correct?

CLMT        Yeah.  I get, I get that from the medication.  Yeah.

ATTY        In fact, your wife said especially since they've increased your medication,

that seems to have triggered more in terms of the gout that you have.  Is that accurate?

CLMT        Yeah.

ATTY        Does that restrict you in terms of getting around?  Being able to be on

your feet?  To stand and walk?  That kind of thing?

CLMT          Uh-huh.  I got it right now, too.

ATTY          You got in your - - you're pointing to your left foot and ankle.

CLMT          That's all swelled up.  Yeah.

*          *          *

ATTY          Why don't you drive anymore?

CLMT          I don't feel that I can.  I start seeing things and I'm afraid I'm going to hit

somebody.  I start to lose my balance in my mind and I pull off the road.  I've done that.  So I'm

just going to give it up.

ATTY          You just quit driving altogether.

CLMT          Let my wife drive.  Yeah.

ATTY          Dr. Mellon mentioned, I think, in one of his notes that you see cars on the

highway and feel they were coming at you.  You'd have to pull off the road until you could get

calmed down and be able to drive again.

CLMT          Uh-huh.

*          *          *

ATTY          During this past summer, were you able to provide care for your children?

CLMT          No.

ATTY          And what was the situation, and how did those children have care during

the summer?

CLMT          Have people come over and watch them.  Parents, grandparents.  This and

that.  And I just isolate myself like I usually do.

ATTY        When you say you isolate yourself, where do you go physically?

CLMT        My bedroom.

ATTY        So you stay in your bedroom during the day?

CLMT        Yeah.  Turn the TV on.  Just, you know, something to do.  I couldn't, I couldn't, get around too good.

*        *        *

CLMT        I have difficulty reading too.

ATTY        What happens?

CLMT        Everything gets blurry.

ATTY        You have problems understanding or comprehending as you're reading?

CLMT        Sometimes, yeah.

*        *        *

ATTY        One of the things you and your wife mentioned prior to the hearing, that you fall asleep quite a bit it seems.  There seems to be a question of whether this is part of the depression, part of the medication, or probably a combined factor.  How often do you fall asleep during the day?

CLMT        Seven, eight times probably.

ATTY        Again, you're saying - - you don't necessarily go back to bed, but you'll be sitting?

CLMT        I could be anywhere and just fall asleep.

ATTY        Doze off.  How long are you out for usually when you doze off?

CLMT        Half hour.  45 minutes.  Somebody pushes me.  Wakes me up. Yeah.

ATTY      And that's not necessarily something that you're trying to do.

CLMT      No.  My brain just shuts down.

                *            *            *

ATTY      But you don't actually go in the store yourself.

CLMT      No, no, no, no.  Not any more.

ATTY      Why?  What happens if you go to the store?

CLMT      It's the people.  And everybody around.  Makes me real jittery and nervous.  I can't stand a bunch of people either.  Just try to avoid everybody.  Isolate myself a lot.

                *            *            *

Q      Sir, now you have a - - I notice in the record it said you have - - you like boating and fishing when you feel good.  Do you still do that?

A      No.

Q      When's the last time?  This summer did you go boating at all?

A      No.

Q      Did you go fishing at all?

A      No.

Q      It says here, last summer - - anyway, Mr. Bertolino, about a year ago that you do do [sic] some general contracting, and have some intermittent jobs.  Like a job once in awhile.  What's the doctor talking about?  That was Dr. Luby.

A      I don't know.

ATTY      Remember we talked about this?  You and your - -

CLMT        Oh.  I was trying to get something going because we were starving.  Yeah. I tried to get out there.  Before I got on this medication.  Now, I can't do anything.

Q        Did you work much?

A        No.

Q        What did you do when you did go out there and work?

A        I tried to get some - - doing some roofs.

Q        Some roofs?

A        But I can't do it.

Q        Could you get up on a ladder?

A        No.  Not now.  I did.  I got up there but I couldn't get back down.  I just got away from it.  It's too risky for me now.

                    *            *            *

Q        Do you ever golf anymore?

A        No.  I don't do none of that stuff anymore.

Q        How much sleep did you get last night?

A        I don't even know.  I got up a few times and this and that.  Take some medication and that, but I don't know how many times I - -

                    *            *            *

ATTY        Have you driven at all this month?

CLMT        I tried one time, but I got scared as shit.  I just brought it back home.  I tried to go down my parents why I tried to do.

ATTY        They live near you, right?

| CLMT | Within eight miles. |
|------|---------------------|
| ATTY | So you drive there? |
| CLMT | I tried. But I can't now. |

### 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 254-256):

EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:

Q    How would you describe the telemarketer job?

A    It's sedentary exertional.  SVP 3, semi-skilled.

Q    That's the only relevant work in the last 15 years, I believe.  Other part-time jobs in the late 80s.  Please assume an individual approaching advanced age of 51, with a high school education and some college.  Precluded from performing all but light work.  No hazards.  Work that is unskilled and low stress.  Defined as one-and two-step processes, routine and repetitive tasks, primarily working with things rather than people, entry-level.  With those limitations, can you describe any work this hypothetical individual can perform?

A    Okay.  (INAUDIBLE) would fit within the hypothetical was given.  Work in miscellaneous food prep.  There are 255,977 in the national economy.  For the regional economy, over 2,300.  Work as stock check/apparel.  65,000 nationally, over 400 regional.  Assembler/electrical accessories.  70,000 national, over 500 regional.  Folder.  75,000 national, over 3,000 regional.  Garment sorter.  95,000 national, 1,000 regional.

Q    Are those jobs consistent with the DOT?

A Yes, they are, sir.

Q If Mr. Bertolino's concentration was so impacted that he cannot stay on-task one-third to two-thirds of the day, are those jobs affected?

A Yes, they are, sir.

ALJ Okay. Mr. Remaley?

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q If an individual, due to a combination of their medical condition and the medication that they're taking, were to fall asleep unpredictably for a total of up to two hours per an eight-hour period, would that affect their ability to (INAUDIBLE).

A Yes, it does.

Q And would they, in fact, be unable to hold a full-time job if that were the case?

A They would not be able to.

E. Lifestyle Evidence

The following evidence concerning Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how Claimant's alleged impairments affect his daily life.

- Uses a cane. (Tr. 237).

- Was diagnosed with schizophrenia, bipolar disorder, depression and seizure disorders. (Tr. 238-239).

- Has a driver's license. (Tr. 242).

- Watches the television. (Tr. 244).

- Reads the newspaper. (Tr. 244).

- Waits in the car while his wife does the grocery shopping.  (Tr. 247).

- Visits his parents.  (Tr. 248).

## III.  The Motions for Summary Judgment

A.  <u>Contentions of the Parties</u>

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ's hypothetical posed to the vocational expert did not accurately set forth all of Claimant's specific work-related limitations, namely, Claimant's inability to deal appropriately with people.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ's hypothetical question posed to the vocational expert accurately set forth all of Claimant's limitations that were supported by the record.

B.  <u>The Standards</u>

1.  <u>Summary Judgment</u>.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec.  Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v.  Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

2.	Judicial Review.	Only a final determination of the Commissioner may receive judicial review.	See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.	Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy.	42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.	Social Security - Medically Determinable Impairment.	The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.	42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.	Disability Prior to Expiration of Insured Status- Burden.	In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.	Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6.	Social Security - Standard of Review.	It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.	The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.	Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7.	Social Security - Scope of Review - Weight Given to Relevant Evidence.	The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."	Milburn

Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8.     Social Security - Substantial Evidence - Defined.   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9.     Social Security - Sequential Analysis.   To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy.  Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).
complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).

10.     Social Security - Residual Functional Capacity.   A Residual Functional Capacity is what Claimant can still do despite her limitations.  20 C.F.R. §§ 404.1545, 416.945.  Residual Functional Capacity is an assessment based upon all of the relevant evidence. Id.  It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical condition. Id.  Observations by treating physicians,

17

psychologists, family, neighbors, friends, or other persons, of Claimant's limitations may be used. Id. These descriptions and observations must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities. Id. This assessment is not a decision on whether a Claimant is disabled, but is used as the basis for determining the particular types of work a Clamant may be able to do despite their impairments. Id.

      11.   <u>Social Security - Vocational Expert</u>. Once it is established that a claimant cannot perform past relevant work, the burden shifts to the Social Security Administration to establish that a significant number of other jobs are available in the national economy which the claimant can perform. 20 C.F.R. §§ 404.1520(f), 416.920(f).

C.    <u>Discussion</u>

THE ALJ RELIED UPON AN INCOMPLETE AND INADEQUATE HYPOTHETICAL
QUESTION POSED TO THE VOCATIONAL EXPERT

      Claimant contends that the ALJ relied upon an incomplete and inadequate hypothetical to the VE. The Commissioner counters that the ALJ accurately set forth Claimant's limitations in the hypothetical.

      The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. at § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. at § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment

meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative

Regulations No. 4. Id. at § 404.1520(d). If it does, the claimant is found disabled and awarded

benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the

performance of past relevant work. Id. at § 404.1520(e). By satisfying inquiry four, the claimant

establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th

Cir. 1983), and leads to the fifth and final inquiry: whether the claimant has the residual

functional capacity to perform other forms of substantial gainful activity, considering the

claimant's age, education, work experience and impairments. Id.

The question is whether the hypothetical question properly set forth all the relevant

evidence of record concerning Claimant's impairments. "The purpose of bringing in a vocation

expert is to assist the ALJ in determining whether there is work available in the national economy

which the particular claimant can perform." Cline v. Chater, No. 95-2076, 1996 U.S. Dist. LEXIS

8692, at *4 (4th Cir. Apr. 19, 1996).[6] "[R]equiring the testimony of a vocational expert is

discretionary." Hall v. Harris, 658 F.2d 260, 267 (4th Cir. 1981). The Fourth Circuit Court of

Appeals has held, albeit in unpublished opinion, that while questions posed to the vocational

expert must fairly set out all of the claimant's impairments, the question need only reflect those

impairments supported by the record. Russell v. Barnhart, No. 02-1201, 2003 U.S. App. LEXIS

2178 (4th Cir. Feb. 7, 2003). The court further stated that the hypothetical question may omit

---

[6] This Court recognizes that the United States Court of Appeals for the Fourth Circuit
disfavors citation to unpublished opinions. I recognize the reasons for that position and
acknowledge it. Unfortunately, there is not a better indicator of what its decision might be in
this regard.

non-severe impairments, but must included those that the ALJ finds to be severe.  Id.  Finally, the ALJ has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question.  Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at * 5 (4th Cir. Jan. 11, 1999).

In this case, the ALJ's hypothetical to the Vocational Expert incorporated Claimant's limitations that are supported by the record.  The hypothetical posed by the ALJ asked the Vocational Expert to assume an age of 51, a high school education and some college, and Claimant's relevant work experience.  (Tr. 254-256).  With respect to Claimant's residual functional capacity, the hypothetical assumed a capacity for light work subject to no exposure to hazardous areas and with limitations for unskilled and low stress work that involves one to two step instructions, routine and repetitive task, and working with things rather than people.  (Tr. 254-256).  Claimant does not contest the findings related to his exertional impairments.  Rather, he contests that the posited capacity to perform "simple, repetitive one, two step tasks primarily working with things rather than people" did not reasonably encompass the scope of his limited ability to follow rules, relate to coworkers, function independently, attend to and concentrate on tasks and utilize general intellectual functioning.  (Pl.'s Br, at  7, 9).

In this regard, Claimant relies on Burns v. Barnhart, 312 F.3d 113 (3d 2002), for the proposition that, "[i]n the absence of an [sic] hypothetical assumption that can be fairly said to describe with specificity plaintiff's work-related limitation the ALJ's decision to deny benefits must, as a matter of law, be found deficient."  (Pl.'s Br. at 8).  Plaintiff's reliance on this case is misplaced.  In Burn, the Court held that the phrase "simple, routine, repetitive work" was not sufficiently descriptive of the claimant's medically established impairments related to borderline

functioning in the areas of reliability, common sense, ability to function independently and judgment, combined with manifestations of flightiness, disassociation, oppositional tendencies and difficulties in comprehension.  Id. at 123.  Burn requires that a hypothetical include all of the claimant's credibly established limitations, but does not require that the vocational expert be apprised of limitations which have been determined not to affect the claimant's RFC.  In that case, the ALJ specifically found that Claimant's RFC was limited by "borderline intellectual functioning" but did not critically evaluate the additional functional limitations supported by the psychiatric evaluation submitted as the sole evidence of claimant's mental limitations.  Id. at 121.

In the present case, the hypothetical directly tracks the RFC finding.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Here, the RFC was supported by substantial evidence.  Although Claimant alleges that the evidence establishes that his personality disorder significantly interferes with his ability to deal appropriately with people and that he has a long history of "severe" limitations in his ability to appropriately interact with other people (Pl's Br. at 8, 10), the ALJ did not find Claimant to be entirely credible  (Tr. 17) and concluded that the objective medical evidence did not support Claimant's claim of such limitations.  (Tr. 16-17).  The ALJ specifically stated that "the generalized anxiety disorder has not resulted in complete inability to function independently outside the are of claimant's own home" and that Claimant's "affective, anxiety, and personality disorders do not meet any listing for a mental impairment inasmuch as neither results in

functional limitations which fulfill either the 'B' or 'C' criteria associated with sections 12.04, 12.06, and 12.08." (Tr. 16).

As was stated above, the Fourth Circuit Court of Appeals has held, albeit in unpublished opinion, that while questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record. Russell v. Barnhart, No. 02-1201, 2003 U.S. App. LEXIS 2178 (4th Cir. Feb. 7, 2003). The court further stated that the hypothetical question may omit non-severe impairments, but must included those that the ALJ finds to be severe. Id. Finally, the ALJ has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question. Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at * 5 (4th Cir. Jan. 11, 1999).

In the present case, the hypothetical was based directly on the ALJ's findings at the fourth step of the disability evaluation and addressed all of Claimant's limitations supported by the record, including any limitations Claimant might have due to his alleged inability to interact with people.[7] (Tr. 254). These findings were based on the ALJ's comprehensive review of the objective medical evidence, functional assessments of consulting and treating physicians and Claimant's account of his daily activities, the latter being discounted by the ALJ's finding that Claimant was not fully credible. (Tr. 17). In this case, the ALJ's hypothetical question contained all of Claimant's limitations supported by the record and, in response to the ALJ's proper question, the VE testified that the hypothetical individual could perform light jobs, such as

---

[7] The ALJ specifically limited the hypothetical individual to working with things rather than people. (Tr. 254-256).

miscellaneous food prep, stock check/apparel, assembler/electrical accessories, folder and garment sorter. (Tr. 254-255).

Therefore, the ALJ posed a proper hypothetical question to the Vocational Expert.

## IV.  Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision.  Specifically, the ALJ posed a proper hypothetical question to the Vocational Expert.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.   A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the Unites States District Court for the Norther District of West Virginia.

DATED: January 20, 2006

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE